IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FLORENCE MUSSAT, M.D., S.C., on behalf of plaintiff and the class members defined herein, | ) ) ) ) | |
| Plaintiff, | ) ) | 17 C 8841 |
| v. | ) ) ) | Judge Kendall Magistrate Judge Martin |
| IQVIA INC., and JOHN DOES 1-10, | ) ) ) | |
| Defendants. | ) | |

## AMENDED COMPLAINT – CLASS ACTION

### INTRODUCTION

1.  Plaintiff Florence Mussat, M.D., S.C. brings this action to secure redress for the actions of defendant IQVIA Inc. ("IQVIA"), in sending or causing the sending of unsolicited advertisements to telephone facsimile machines in violation of the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

2.  The TCPA expressly prohibits unsolicited fax advertising. Unsolicited fax advertising damages the recipients. The recipient is deprived of the use of its fax machine. The recipient also wastes valuable time it would have spent on something else. Unsolicited faxes prevent fax machines from receiving and sending authorized faxes, cause wear and tear on fax machines, cost the recipient ink or toner used to print the junk faxes and require labor to attempt to identify the source and purpose of the unsolicited faxes.

## PARTIES

3.     Plaintiff Florence Mussat, M.D., S.C. is an Illinois professional corporation located at 680 N. Lake Shore Drive, Suite 1030, Chicago, Illinois 60611, where it maintains telephone facsimile equipment.

4.     Defendant IQVIA is a Delaware corporation. Its registered agent and office is The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801. IQVIA was formed through the merger of IMS Health Inc. and Quintiles IMS Health Inc.

5.     Defendant is engaged in data mining for the healthcare industry. Among other things, it obtains information about drug prescriptions from physicians and pharmacies in exchange for compensation. It aggregates, organizes and sells the data to support the marketing efforts of drug makers and others.

6.     While most of defendant's sales are made to companies in life sciences, including pharmaceutical companies, biotechnology companies, device and diagnostic companies, and consumer health companies, defendant also sells to payers, government and regulatory agencies, healthcare providers, pharmaceutical distributors, and pharmacies.

7.     Defendants John Does 1-10 are other natural or artificial persons that were involved in the sending of the facsimile advertisements described below. Plaintiff does not know who they are.

## JURISDICTION AND VENUE

8.     This Court has jurisdiction under 28 U.S.C. §1331. *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740, 751-53 (2012); *Brill v. Countrywide Home Loans, Inc.*,

427 F.3d 446 (7th Cir. 2005).

9. Personal jurisdiction exists in that defendants:

   a. Have committed tortious acts in Illinois by causing the transmission of unlawful communications into the state.

   b. Have transacted business in Illinois.

10. Venue in this District is proper for the same reason.

**FACTS**

11. On November 10, 2017, plaintiff Florence Mussat, M.D., S.C. received the unsolicited fax advertisement attached as Exhibit A on its facsimile machine.

12. On December 4, 2017, plaintiff Florence Mussat, M.D., S.C. received the unsolicited fax advertisement attached as Exhibit B on its facsimile machine.

13. Discovery may reveal the transmission of additional faxes as well.

14. Defendant IQVIA is responsible for sending or causing the sending of the faxes.

15. Defendant IQVIA, as the entity whose products or services were advertised in the faxes, derived economic benefit from the sending of the faxes.

16. The fax seeks membership in the National Disease and Therapeutic Index ("NDTI").

17. The NDTI is a database product that is commercially available to pharmaceutical manufacturers and other members of the healthcare industry.

18. The NDTI was developed in 1958 to provide representative data on the population for whom drugs are prescribed, as well as the prescribers, in the United States.

19. The basic data is gathered in an ongoing fashion from a panel of 3,700 physicians

selected to represent a statistical sample of practicing physicians. Since a large proportion of practitioners are primary-care providers (e.g., general practitioners or internal medicine specialists), these groups are well sampled. Smaller specialty groups, such as ear, nose, and throat physicians, are sparsely represented.

20. Each panel physician records data every quarter for a two-day period, using a special duplicate prescription form for all drugs prescribed. When a prescription is written, not only is the usual information (drug name, amount, dosing instructions and duration) written, but also the indication for the drug, the patient's gender and age, the site of prescription (hospital, clinic, etc.), other drugs the patient is taking, other diagnoses, and some physical exam and laboratory data. This data, excluding patient identification, is provided to defendant for inclusion in the database.

21. This NDTI database provides an ongoing national estimate of the pharmaceutical prescribing practices in the United States. This data is expressed as "mentions" of a pharmaceutical, since the information on pharmaceuticals is mentioned in both the actual prescription as well as concomitant therapy. Because of the careful sampling of practitioners, the actual numbers of mentions can be extrapolated to provide approximate national estimates of the characteristics of patients exposed to specific drug products and other products they are using.

22. NDTI data is most often used by pharmaceutical manufacturer's marketing departments. Post-marketing surveillance and drug safety groups both within and outside the pharmaceutical industry also use this data to estimate the characteristics of populations for both epidemiological studies and for developing exposure denominators for pharmaceutical benefit and risk assessment.

23. IQVIA sells the information in the database for profit as part of its business activities.

24. To maintain a suitable sampling of physicians, IQVIA solicits physicians via facsimile.

25. <u>Exhibits A and B</u> invite plaintiff and other recipients to participate in defendant's study by collecting patient information and providing it to defendant.

26. <u>Exhibits A and B</u> do not identify any qualifications or pre-screening process in order to have a physician participate in defendant's study.

27. Medical professionals who participate in the NDTI program earn compensation in the form of points toward the purchase of merchandise, gift cards, tickets or links to medical journals and the AMA website.

28. On information and belief, other rewards, including defendant's products and services, are also available on www.imsrxpanels.com.

29. Defendant IQVIA either negligently or wilfully violated the rights of plaintiff and other recipients in sending the faxes.

30. Each fax refers to an email address, phone and fax numbers used by defendant IQVIA.

31. Plaintiff had no prior relationship with defendant and had not authorized the sending of fax advertisements to plaintiff.

32. The fax did not contain an "opt out" notice in the form required by 47 U.S.C. §227.

33. The TCPA provides for affirmative defenses of consent or an established business

5

relationship. Both defenses are conditioned on the provision of an opt out notice that complies with the TCPA. *Holtzman v. Turza*, 728 F.3d 682 (7th Cir. 2013); *Nack v. Walburg*, 715 F.3d 680 (8th Cir. 2013).

34. On information and belief, the faxes attached hereto were sent as part of a mass broadcasting of faxes.

35. On information and belief, defendant has transmitted similar unsolicited fax advertisements to at least 40 other persons in Illinois.

36. There is no reasonable means for plaintiff or other recipients of defendant's unsolicited advertising faxes to avoid receiving illegal faxes. Fax machines must be left on and ready to receive the urgent communications authorized by their owners.

## COUNT I – TCPA

37. Plaintiff incorporates ¶¶ 1-36.

38. The TCPA makes unlawful the "use of any telephone facsimile machine, computer or other device to send an unsolicited advertisement to a telephone facsimile machine ..." 47 U.S.C. §227(b)(1)(C).

39. The TCPA, 47 U.S.C. §227(b)(3), provides:

**Private right of action.**

**A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State–**

**(A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,**

**(B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each such violation,**

>  whichever is greater, or
>
>  **(C)  both such actions.**
>
>  **If the Court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under the subparagraph (B) of this paragraph.**

40. Plaintiff and each class member suffered damages as a result of receipt of the unsolicited faxes, including the cost of ink or toner to print the junk faxes and wear and tear on the recipient's fax machine. Defendant has shifted its costs of advertising on plaintiff and each class member. Furthermore, plaintiff's statutory right of privacy was invaded.

41. Plaintiff and each class member is entitled to statutory damages.

42. Defendant violated the TCPA even if its actions were only negligent.

43. Defendant should be enjoined from committing similar violations in the future.

## CLASS ALLEGATIONS

44. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), plaintiff brings this claim on behalf of a class, consisting of (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendant IQVIA, promoting its goods or services for sale (d) and which did not contain an opt out notice as described in 47 U.S.C. §227.

45. The class is so numerous that joinder of all members is impractical. Plaintiff alleges on information and belief that there are more than 40 members of the class.

46. There are questions of law and fact common to the class that predominate over any questions affecting only individual class members. The predominant common questions

include:

    a.    Whether defendants engaged in a pattern of sending unsolicited fax advertisements;

    b.    The manner in which defendants compiled or obtained their list of fax numbers;

    c.    Whether defendants thereby violated the TCPA;

47.    Plaintiff will fairly and adequately protect the interests of the class. Plaintiff has retained counsel experienced in handling class actions and claims involving unlawful business practices. Neither plaintiff nor plaintiff's counsel have any interests which might cause them not to vigorously pursue this action.

48.    Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

49.    A class action is the superior method for the fair and efficient adjudication of this controversy. The interest of class members in individually controlling the prosecution of separate claims against defendants is small because it is not economically feasible to bring individual actions.

50.    Several courts have certified class actions under the TCPA. *Sadowski v. Med1 Online, LLC,* 07 C 2973, 2008 U.S. Dist. LEXIS 41766 (N.D.Ill., May 27, 2008); *CE Design Ltd. v Cy's Crabhouse North, Inc.*, 259 F.R.D. 135 (N.D.Ill. 2009); *Targin Sign Sys. v Preferred Chiropractic Ctr., Ltd.*, 679 F. Supp. 2d 894 (N.D.Ill. 2010); *Garrett v. Ragle Dental Lab, Inc.,* 10 C 1315, 2010 U.S. Dist. LEXIS 108339, 2010 WL 4074379 (N.D.Ill., Oct. 12, 2010); *Hinman v. M & M Rental Ctr.,* 545 F.Supp. 2d 802 (N.D.Ill. 2008); *Clearbrook v. Rooflifters,*

*LLC*, 08 C 3276, 2010 U.S. Dist. LEXIS 72902 (N.D. Ill. July 20, 2010) (Cox, M.J.); *G.M. Sign, Inc. v. Group C Communs., Inc.*, 08 C 4521, 2010 U.S. Dist. LEXIS 17843 (N.D. Ill. Feb. 25, 2010); *Holtzman v. Turza*, 08 C 2014, 2009 U.S. Dist. LEXIS 95620 (N.D.Ill., Oct. 14, 2009); *Kavu, Inc. v. Omnipak Corp.,* 246 F.R.D. 642 (W.D.Wash. 2007); *Display South, Inc. v. Express Computer Supply, Inc.,* 961 So.2d 451, 455 (La. App. 1st Cir. 2007); *Display South, Inc. v. Graphics House Sports Promotions, Inc.*, 992 So. 2d 510 (La. App. 1st Cir. 2008); *Lampkin v. GGH, Inc.*, 146 P.3d 847 (Ok. App. 2006); *ESI Ergonomic Solutions, LLC v. United Artists Theatre Circuit, Inc.*, 203 Ariz. (App.) 94, 50 P.3d 844 (2002); *Core Funding Group, LLC v. Young*, 792 N.E.2d 547 (Ind.App. 2003); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 293 Kan. 285; 263 P.3d 767 (2011); *Karen S. Little, L.L.C. v. Drury Inns. Inc.,* 306 S.W.3d 577 (Mo. App. 2010); *Travel 100 Group, Inc. v. Empire Cooler Service, Inc.*, 03 CH 14510 (Cook Co. Cir. Ct., Oct. 19, 2004); *Rawson v. C.P. Partners LLC*, 03 CH 14510 (Cook Co. Cir. Ct., Sept. 30, 2005); *Nicholson v. Hooters of Augusta, Inc.*, 245 Ga.App. 363, 537 S.E.2d 468 (2000).

51. Management of this class action is likely to present significantly fewer difficulties that those presented in many class actions, e.g. for securities fraud.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendants for:

    a.    Actual damages;

    b.    Statutory damages;

    c.    An injunction against the further transmission of unsolicited fax advertising;

    d.    Costs of suit;

      e.      Such other or further relief as the Court deems just and proper.

                                        s/ Daniel A. Edelman
                                       Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Heather Kolbus
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

Curtis C. Warner
Warner Law Firm, LLC
350 S. Northwest Hwy., Suite 300
Park Ridge, IL 60068
(847) 701-5290

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

                                                     s/ Daniel A. Edelman
                                                    Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
       & GOODWIN, LLC
20 S. Clark Street, Suite 1500
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)