IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FLORENCE MUSSAT, M.D., S.C., | ) | |
| on behalf of plaintiff and | ) | |
| the class members defined herein, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:17-CV-08841 |
| | ) | |
| v. | ) | Honorable Virginia M. Kendall |
| | ) | |
| IQVIA INC., | ) | |
| and JOHN DOES 1-10, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF IQVIA INC.'S
MOTION TO DISMISS AMENDED COMPLAINT**

The Defendant, IQVIA Inc., through counsel, Meyer Law Group LLC, offers this Memorandum in support of its Motion to Dismiss the Plaintiff Florence Mussat, M.D., S.C.'s Amended Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6):

**I.  SUMMARY**

Florence Mussat, M.D., S.C. ("Plaintiff")[1] filed this putative class action against IQVIA Inc. ("IQVIA")[2], alleging that IQVIA violated the Telephone Consumer Protection Act of 1991 ("TCPA") by sending it two "unsolicited advertisements" via facsimile ("fax"). The fax messages at issue here – which invite Dr. Mussat to participate in a research study – are not "advertisements" under the TCPA because they do not advertise "the commercial availability or quality of any property, goods, or services." *See*, 47 U.S.C. § 227(a)(5). This fact is evident from the face of the

---

[1]  The faxes were sent to the attention of Dr. Florence Mussat ("Dr. Mussat"), although the Complaint alleges that Plaintiff received the faxes on its (Plaintiff's) facsimile machine.
[2]  In its original Complaint (Document No. 1), Plaintiff named the wrong Defendant. By agreement of the Parties and with leave of Court, Plaintiff filed an Amended Complaint. (Document No. 15). Accordingly, the instant Motion to Dismiss is the first responsive pleading filed by IQVIA.

fax messages. As a result, because the fax messages are not advertisements and because no amendment can cure this deficiency, this Court should dismiss Plaintiff's Amended Complaint with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## II. BACKGROUND

The background here is derived from the allegations in Plaintiff's Amended Complaint and the subject fax messages attached to the Amended Complaint. *See*, Moranski v. GMC, 433 F.3d 537, 539 (7th Cir. 2005) ("Any written instrument attached to the complaint is considered a part of the complaint" and thus "properly considered… on a motion to dismiss for failure to state a claim"), *citing*, Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

### A. The Fax Messages

In November and December 2017, IQVIA allegedly sent two fax messages to Plaintiff inviting Dr. Mussat to participate in a research study, the National Disease and Therapeutic Index ("NDTI"). (Document No. 15 at ¶¶ 11-12 and 25; Exs. A and B thereto). Plaintiff alleges "[o]n information and belief" that IQVIA transmitted similar fax messages "to at least 40 other persons in Illinois." (Id. at ¶ 35).

Roughly speaking, the one-page fax messages are divided into three sections, with each section filling-up approximately 1/3 of the page. The fax messages themselves make clear their purpose. In the first section (top 1/3 of the page), the fax messages identify Dr. Mussat by name and unique reference number and invite her "to join a ***select group*** of physicians who participate in a nationally recognized, HIPAA-compliant study that collects data from office-based physician practices." (Id. at Exs. A and B) (*emphasis supplied*). The fax messages: (a) describe the purpose of the study ("to track patterns of diseases and identify new therapeutic opportunities across the

entire US"); (b) define the nature and scope of the study's data collection process: ("[t]wo days per quarter, record the following patient information online," with categorical descriptions of the data to be collected and recorded); and (c) provide examples of public and private-sector establishments who will benefit from the study (including Centers for Disease Control and Prevention and the World Health Organization). (Id. at Exs. A and B).

In the second section (middle 1/3 of the page), the fax messages notify Dr. Mussat of a "rewards program" in the event she decides to participate in the study, including: (a) the reason for the program (to reward participants for contributing to the study); (b) the program rules (participants earn "points" toward a wide variety of "gifts"); and (c) the process for redemption (an online catalog at www.imsrxpanels.com). (Id. at Exs. A and B).

The third and final section of the fax messages (bottom 1/3 of the page) includes a fill-in-the-blank application with blank lines for Dr. Mussat's business and personal information, including her "primary specialty." The fax messages also detail: (a) where to send the completed application (via fax to 1-877-270-0502); (b) how to request more information (via email at Maribeth.Francisco@quintilesims.com or via phone at 1-866-373-0383); and (c) what to do if Dr. Mussat is already participating in the study (disregard the invitation). (Id. at Exs. A and B).

The fax messages contain no offer for the sale of goods or services.

B.  **Other Allegations from Plaintiff's Amended Complaint**

The Amended Complaint contains several allegations describing the purported history and supposed use(s) of NDTI, including its commercial availability to pharmaceutical manufacturers (Id. at ¶¶ 17 and 22-23) (IQVIA "sells the information in the database for profit as part of its business activities" to pharmaceutical manufacturers and others). But the Amended Complaint nowhere alleges that the fax messages advertise the commercial availability or quality of NDTI

3

(or any other product(s) or service(s)) for sale to Plaintiff. To the contrary, the Amended Complaint specifically alleges "[t]he fax *seeks membership* in the NDTI" in order for IQVIA to "maintain a suitable sampling of physicians" (Id. at ¶¶ 16 and 24) (*emphasis supplied*). And, the faxes merely "invite[d] plaintiff and other recipients *to participate* in defendant's study by collecting patient information and providing it to" IQVIA for inclusion in the research study. (Id. at ¶ 25) (*emphasis supplied*). Far from advertising NDTI for sale to Plaintiff (or any other fax recipient), the fax invitations sought Dr. Mussat's participation in the research study itself and notified her of a program to reward her for her contributions. (Id. at ¶27).

### III.     LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss challenges the sufficiency of the complaint to state a claim upon which a court can grant relief. Hallinan v. Fraternal Order of Police Chicago Lodge 7, 570 F.3d 811, 820 (7th Cir. 2009). The Supreme Court explained that Rule 12(b)(6) dismissal is warranted if the complaint fails to set forth "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Moreover, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

The Seventh Circuit has offered further direction on what a complaint must do to withstand dismissal for failure to state a claim. In Pugh v. Tribune Co., 521 F.3d 686 (7th Cir. 2008), the Court explained: "surviving a Rule 12(b)(6) motion requires more than labels and conclusions;" the factual allegations must "raise a right to relief above the speculative level." Id. at 699. Similarly, the Court remarked in Swanson v. Citibank, N.A., 614 F.3d 400 (7th Cir. 2010): "It is by now well established that a plaintiff must do better than putting a few words on paper that, in

the hands of an imaginative reader, *might* suggest that something has happened to her that *might* be redressed by the law." Id. at 403 (*emphasis in original*).

In making this assessment and evaluating plausibility, the Court may consider materials attached to the complaint. Moranski, 433 F.3d at 539.

## IV.    ARGUMENT

### A.    The TCPA's Fax Prohibition Only Applies to Advertisements.

Subject to certain exceptions not raised in this Motion,[3] the TCPA prohibits the use of any telephone facsimile machine, computer or other device to send an "unsolicited ***advertisement***." 47 U.S.C. § 227(b)(1)(C) (*emphasis supplied*). An "unsolicited advertisement" is "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227(a)(5). "Congress' primary purpose in enacting the TCPA was to prevent the shifting of ***advertising*** costs to recipients of unsolicited fax advertisements…." Phillips Randolph Enters., L.L.C. v. Adler Weiner Research Chi., Inc., 526 F. Supp. 2d 851, 852 (N.D. Ill. January 30, 2007), *citing*, H.R. Rep. No. 317, at 10, 102d Cong., 1st Sess. 25 (1991) (*emphasis supplied*). Importantly, Congress intended non-commercial fax messages to fall outside the prohibition. Id.

The term "advertisement" requires that the material must unambiguously contain "commercial" components: "To be an ad, the fax must promote goods or services that are for sale, and the sender must have profit as an aim." Sandusky Wellness Ctr., LLC v. Medco Health Sols.,

---

[3]    On December 11, 2017, the Court provided notice of its participation in the Mandatory Initial Discovery Pilot ("MIDP") (Document No. 11). The MIDP supersedes Fed. R. Civ. P. 12(a)(4) by requiring a defendant to file an Answer by the initial responsive pleading deadline, even if it has filed a preliminary motion pursuant to Fed. R. Civ. P. 12(b). *See*, MIDP Standing Order at § A.3. Contemporaneously herewith, IQVIA files its Answer to the Amended Complaint, which includes, *inter alia*, an affirmative defense of consent.

Inc., 788 F.3d 218, 223-24 (6th Cir. 2015) (affirming summary judgment because faxes were not "advertisements" under the TCPA); *see also*, Ameriguard, Inc. v. Univ. of Kan. Med. Ctr. Research Inst., 2006 U.S. Dist. LEXIS 42552, at *3-5 (W.D. Mo. June 23, 2006) (fax advertising clinical research trial for diabetes was outside the scope of TCPA); Lutz App. Servs., Inc. v. Curry, 859 F. Supp. 180, 181 (E.D. Pa. July 28, 1994) (fax announcing the existence of job openings was not an advertisement for a property, good, or service); and ARcare v. IMS Health, Inc., 2016 U.S. Dist. LEXIS 125262, at *12 (E. D. Ark. Sept. 15, 2016) (fax requesting recipient to verify contact information with instructions on how to request and receive additional information was outside the scope of the TCPA because it "did not tend to propose a commercial transaction").[4]

Where, as here, the faxes do not advertise the commercial availability or quality of any property, goods or services, they fall outside the scope of the TCPA necessitating the dismissal of the Amended Complaint for its failure to state a claim.

**B.   IQVIA's Fax Messages Are Not Advertisements and Thus Fall Outside the Scope of the TCPA.**

On their face, the fax messages in the present case do not advertise the commercial availability or quality of any property, goods, or services. They instead invite Dr. Mussat to participate in a research study that collects data from a "select group" of "office-based physician practices." The faxes are not advertisements as a matter of law because they do not offer anything – directly or indirectly – for purchase or sale to the fax recipients. The TCPA's prohibition against unsolicited advertisements sent via fax does not apply to the invitations allegedly sent by IQVIA, necessitating dismissal of the Amended Complaint with prejudice.

---

[4] IQVIA relies on some non-controlling case law in light of a lack of Seventh Circuit opinions discussing the dispute in question. The cited authority is persuasive and should inform this Court's ruling.

### 1. An Invitation to Participate in a Study is Not an Advertisement Under the TCPA.

The issue for this Court is whether the fax messages sent by IQVIA promote the "commercial availability" of a product or service. They do not. No good or service is being advertised for sale in the fax messages, and Plaintiff does not allege otherwise. Indeed, Plaintiff never alleges what kind of services or goods the fax messages purportedly attempt to sell, but merely makes the baseless and conclusory accusation that the fax messages advertise IQVIA's services or goods.

The court in Adler-Weiner was faced with a very similar issue to the one presented here. 526 F. Supp. 2d at 852. In relevant part, the fax sent by the Adler-Weiner defendants stated:

> Attention: Business Owners & Business Decision Makers Adler Weiner Research is currently inviting business owners or business decision makes [sic] to participate in a research discussion on the topic of a new HEALTHCARE PROGRAM sponsored by The Chicagoland Chamber of Commerce
> \*\*\*
> HONORARIUM: \*\*\*$200.00 CASH \*\*\* If you are interested in participating in this research study, please call to see if you qualify between the hours of 9:00 am to 4:30 pm.

Id. The plaintiff argued that the fax advertised a "service" in the form of a "research discussion" on a healthcare program. Id. at 853. The plaintiff contended this was akin to a "free seminar" or similar service which served as a pretext to advertise commercial products and services (the "healthcare program"), and thus fell within the scope of the TCPA. Id.

The Court (Honorable Elaine E. Bucklo) disagreed: "[o]n its face, the fax does not promote a 'commercially available service,' but a research study." Id. The Adler-Weiner Court also rejected the plaintiff's comparison to a pre-textual free seminar. Adler-Weiner, 526 F. Supp. 2d at 853. The complaint only alleged that defendants' "products or services were advertised in the fax" and the only product or service identified was the "research discussion." Id.

7

The Adler-Weiner Court further noted that "unlike an advertisement, the fax is not an indiscriminate, open-ended invitation. Instead, the fax makes clear individuals interested in participating in the research study must be qualified…." Id. The Court granted the defendants' Rule 12(b)(6) Motion and dismissed the Complaint for failure to state a claim. Id.

Like the fax in Adler-Weiner, the fax messages sent by IQVIA to Dr. Mussat do not promote any goods or services. Instead, the faxes promote a "study that collects data" from "a select group of physicians" to "track patterns of diseases and identify new therapeutic opportunities." (Document No. 15, Exs. A and B thereto). Like the fax in Adler-Weiner, the faxes sent to Dr. Mussat do not: (1) offer to sell NDTI or any other IQVIA product(s) or service(s) to the fax recipient; (2) contain any prices for NDTI or any other IQVIA product(s) or service(s); or (3) announce any discounts or other promotions often viewed as a "pretext" to an advertisement.

Moreover, similar to the fax in Adler-Weiner and unlike an advertisement, the faxes sent to Dr. Mussat explicitly state she could be joining "a select group of physicians" – in the event she decided to participate in the study – signaling that interested recipients of the invitation must be qualified and are pre-screened. The faxes also specify that the study is limited to "office-based physician practices," advising fax recipients that non-office-based physicians will not qualify to participate (*e.g.*, hospital-based physicians or physicians practicing in outpatient centers and clinics). Furthermore, in the application section of the faxes, Dr. Mussat is requested to identify her "primary specialty." The very nature of NDTI – as alleged by Plaintiff in the Amended Complaint – necessitates the gathering of data "in an ongoing fashion from a panel of 3,700 physicians *selected* [by IQVIA] to represent a statistical sample of practicing physicians." (Document No. 15 at ¶¶ 19 and 24) (*emphasis supplied*). Taken together, this language makes clear the faxes were not "open-ended invitations" indiscriminately sent to just any physician or

8

healthcare professional. The faxes were sent to a select group of physicians who were pre-screened and met certain specified criteria (*e.g.*, office-based physician practices).

The fax messages – invitations to participate in a research study – are not advertisements and fall outside the scope of the TCPA. This Court should accordingly dismiss the Amended Complaint with prejudice.

### 2. A "Help-Wanted" Posting and/or "Recruiting Solicitation" are Not Advertisements Under the TCPA.

Likewise, messages that list job openings or similar opportunities, "help-wanted" postings and recruiting solicitations are not covered by the TCPA as they do not offer goods or services for sale. The fax messages sent by IQVIA inviting Dr. Mussat to "participate in a study" by recording non-identified patient information "for inclusion in the [NDTI] database" are analogous to the "help-wanted" postings and "recruiting invitations" which courts have expressly found fall outside the scope the TCPA.

In Payton v. Kale Realty, LLC, 164 F. Supp. 3d 1050 (N.D. Ill. Feb. 22, 2016), the defendants sent an unsolicited text message to the plaintiff's cellular telephone[5] which read:

> Kale Realty named 2013 Top 100 Places to Work by Tribune – We pay 100% on sales – Reply or visit http://joinkale.com to learn more! Rply 68 to unsubscribe.

Id. at 1054.[6]

---

[5] The same definition of "unsolicited advertisement" applies to faxes, calls and text messages under the TCPA. *See*, 47 U.S.C. § 227(a)(5); *see also*, Alleman v. Yellowbook, 2013 U.S. Dist. LEXIS 127212, at *16 (N.D. Ill. Sept. 6, 2013) (applying 47 U.S.C. § 227(a)(5) "unsolicited advertisement" definition for phone calls) and Payton, 164 F. Supp. 3d at 1061 (defining "advertisement" in context of text message as "any material advertising the commercial availability or quality of any property, goods, or services").

[6] Although Payton was decided on summary judgment, the court had no occasion to consider whether the text message was an "advertisement" on the pleadings because the defendants did not file a motion to dismiss on that basis. Rather, the defendant answered the Complaint after the Court denied its motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2).

9

The plaintiff argued that the text message contained an advertisement for Kale's products and services; Kale countered that the text message was not an advertisement, but instead an employment "want ad." Id. 1060-61. The Court (Honorable Joan H. Lefkow) found that: "even after drawing all reasonable inferences in plaintiffs' favor, the message received by plaintiffs is not an 'advertisement' under the TCPA" and entered judgment in favor of Kale. Id. at 1062. In support of its finding, the Court cited distinguishing examples:

> [A] call that seeks to hire individuals to sell a defendant's products may constitute an advertisement 'if the individuals called are encouraged to purchase, rent, or invest in property, goods, or service, during or after the call.' [internal citation omitted] '[A] mere recruitment call,' however, 'is not actionable.'

Id. at 1061, citing, Dolemba v. Ill. Farmers Ins. Co., 2015 U.S. Dist. LEXIS 104314, at *5 (N.D. Ill. Aug. 10, 2015); Friedman v. Torchmark Corp., 2013 U.S. Dist. LEXIS 114321, at *10 (S.D. Cal. Aug. 13, 2013) (finding that a message "inviting Plaintiff to attend a recruiting webinar wherein Plaintiff could learn about Defendant's products to potentially sell them is similar to an offer of employment"); and Lutz App. Servs., Inc., 859 F. Supp. at 181 (job openings).

In Dolemba, the plaintiff alleged that the defendant sent a prerecorded message inviting him to attend a "town hall call offering a business opportunity promoting the commercial availability of insurance, goods, intangibles and services." Dolemba, 2015 U.S. Dist. LEXIS 104314, at *2. The plaintiff further alleged the "business opportunity requires the new agent to acquire goods and services and expend money to [sic] or for the benefit of" Farmers. Id. The Court (Honorable Thomas M. Durkin) found: "[t]he fact that the call informed Dolemba what he would be selling ('insurance'), without more, does not make the call an advertisement." Id. at *9, subsequent history at Dolemba v. Ill. Farmers Ins. Co., 213 F. Supp. 3d 988, 995 (N.D. Ill. Sept. 30, 2016) ("The Court's evaluation of the message as an exempt recruitment call stands. Plaintiff's TCPA claims for calls to landlines are now dismissed with prejudice").

10

The fax messages at issue here are similar to the calls (Dolemba) and text messages (Payton) at issue in those cases. The mere fact that the messages drew attention to the existence of an *opportunity* does not make the messages advertisements. Like the calls and text messages at issue in Dolemba and Payton, the fax messages sent by IQVIA did not promote the commercial *availability* of NDTI, but instead sought to *recruit* Dr. Mussat's participation in the data-gathering process for inclusion in the research study.

The fax messages – similar to a "help-wanted" posting and recruiting solicitation – are not advertisements and fall outside the scope of the TCPA. This Court should accordingly dismiss the Amended Complaint with prejudice.

### 3. Any Hypothetical Future Economic Benefit IQVIA Might Receive Does Not Transform the Fax Messages Into Advertisements.

The Amended Complaint's allegations concerning the scope of IQVIA's "business activities" and use of NDTI by "pharmaceutical manufacturers" are legally irrelevant to determining whether the fax messages are advertisements under the TCPA. Plaintiff's allegation that IQVIA might realize some future economic benefit from the fax messages has been uniformly rejected by courts considering the issue.

In Sandusky, a pharmacy benefit manager sent two faxes to a chiropractic company, listing medications available in the health plans of the chiropractors' patients. Sandusky, 788 F.3d at 220.[7] The plaintiff argued that the defendant might realize a future economic benefit from the faxes "several locks down the stream of commerce." Id. at 225. The Court summarized the plaintiff's unsuccessful argument as follows:

---

[7] Although Sandusky was decided on summary judgment, like Payton, the Sandusky court had no occasion to consider the issue on the pleadings because Medco did not file a motion to dismiss. Rather, Medco answered the complaint and then filed a motion for summary judgment the next day. *See*, Sandusky Wellness Ctr., LLC v. Medco Health Sols., Inc., No. 14-cv-00583-JGC, ECF Nos. 19 and 20 (N.D. Ohio 2014).

11

> No matter what the faxes look like on their face, a jury might conclude that, taken together, they have a positive effect on [the defendant's] business – and thus must have been sent to promote its products or services, with profit in mind. All publicity is apparently *financially* good publicity.

Id. (*emphasis in original*). The Court explicitly rejected the plaintiff's "quasi substantial-effects test, as other courts have." Id., *citing*, *inter alia*, Physicians Healthsource, Inc. v. Janssen Pharms., Inc., 2013 U.S. Dist. LEXIS 15952, at *15 (D.N.J. Feb. 6, 2013) ("I reject Plaintiff's position that the Court should inquire as to whether Defendants would obtain an ancillary commercial benefit as a result of sending the fax…. [T]he inquiry under the TCPA is whether the content of the message is commercial, not what predictions can be made about future economic benefits"); and Physicians Healthsource, Inc. v. MultiPlan Servs., Corp., 2013 U.S. Dist. LEXIS 133397, at *5 (D. Mass. Sept. 18, 2013) (basing its decision "on the four corners of the facsimile"). The Sandusky court concluded:

> The fact that the sender might gain an ancillary, remote, and hypothetical economic benefit later on does not convert a noncommercial, informational communication into a commercial solicitation.
> \*\*\*
> The possibility that future economic benefits will flow from a non-commercial fax, ancillary to the content of the fax, is legally irrelevant to determining whether the fax is an ad.

Sandusky, 788 F.3d at 225.

Similarly, in N.B. Indus. v. Wells Fargo & Co., the defendants sent faxes to the plaintiff: (a) promoting an annual Asian Business Leadership Award sponsored, in part, by Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo"); and (b) containing an application for the award. 2010 U.S. Dist. LEXIS 126432, at *2 (N.D. Cal. Nov. 30, 2010). Page two of the four-page faxes contained an agreement, to be signed by the applicant, agreeing to, *inter alia*, Wells Fargo's "use of the awardee's 'pictures, likeness, name and all other information set

12

forth in the application' in articles and publications and for advertising or promotional purposes." Id. at *5.

The plaintiff in Wells Fargo leveled several arguments to support its contention the faxes were "advertisements" under the TCPA, including that "soliciting award applications invites a commercial transaction in that it solicits an applicant to apply for an award in return for allowing Wells Fargo" to "use the applicant's information for marketing, advertising, and promotional purposes…." Id. at *10. The Court disagreed and concluded "as a matter of law that the faxes here announce only the availability of an award, do not advertise 'the commercial availability or quality' of Wells Fargo's [] 'property, goods, or services'…." Id. Relative to the plaintiff's argument that the faxes proposed a commercial transaction "involving a quid pro quo: an applicant applies for the award in return for allowing Wells Fargo [] to use the applicant's information for marketing, advertising, and promotional purposes," the Court reasoned:

> This 'commercial benefit' to Wells Fargo [] does not alter the analysis that the faxes are not advertisements. For example, participants in research studies often are paid for their time and travel or receive honoraria. *See*, *e.g.*, Phillips Randolph, 526 F. Supp. 2d at 853 ($200 for participating in a market-research study on a new health-care program sponsored by the Chicagoland chamber of commerce); Ameriguard, 2006 U.S. Dist. LEXIS 42552, at *3 (time and travel for participation in clinical study on diabetes). Participants in those studies also gave up their time and, in *Ameriguard*, physically participated in a clinical trial. The market-research study at issue in *Phillips Randolph* was about a new healthcare program, which presumably had commercial relevance. Similarly, conceivably the diabetes clinical study in *Ameriguard* was relevant to a product or treatment with commercial application. Nothing could be more business-related than soliciting bids for a construction project or posting notice of employment opportunities.

Id. at *25-26. The existence of any actual or alleged "commercial benefit" to Wells Fargo in sending the faxes was not legally relevant. "The inquiry is not whether there is an ancillary commercial benefit to either party but instead is whether the message is an advertisement (or a pretext for an advertisement)." Id. at *26. The Court found that the "application for an award is

13

not an advertisement because it is not 'material advertising the commercial availability or quality of any property, goods, or services.'" Id.

In the present case, Plaintiff alleges that the information recorded by participating physicians in the study is "provided to [IQVIA] for inclusion in the [NDTI] database" and eventually sold – ***not*** to Plaintiff or other fax recipients, but to pharmaceutical manufacturer's marketing departments, post-marketing surveillance and drug safety groups – "for profit as part of [IQVIA's] business activities." (Document No. 15 at ¶¶ 22-23 and 25). As several courts have found, those allegations are legally irrelevant to this Court's determination whether the faxes are "advertisements" under the TCPA. For the reasons argued more fully in the Argument Sections above, the fax messages sent to Plaintiff are not advertisements because they do not "advertise the commercial availability or quality of any property, goods, or services." They are instead invitations to participate in a study akin to "help-wanted" postings and "recruiting invitations" which courts have expressly found fall outside the scope of the TCPA. The fact that IQVIA may reward participating physicians for their contributions to the research study and/or that IQVIA might gain an ancillary economic benefit from those contributions later on does not convert the invitations into advertisements as a matter of law.

## V.     CONCLUSION

Plaintiff cannot change the non-advertising nature of the fax messages, so any further amendment to the Amended Complaint would be futile. IQVIA therefore respectfully requests this Court to dismiss the Amended Complaint with prejudice. *See*, Doermer v. Callen, 847 F.3d 522, 528 (7th Cir. 2017) ("where amendment would be futile, district court may deny leave to amend and enter immediate final judgment").

Dated: <u>March 14, 2018</u>.	Respectfully Submitted:

                                                      By:	/s/ Edward C. Eberspacher
                                                             Edward C. Eberspacher
                                                              Counsel to IQVIA Inc.


Edward C. Eberspacher
Meyer Law Group LLC
30 North LaSalle Street
Suite 1410
Chicago, Illinois 60602
T – 312.265.0565
F – 312.888.3930
E – teberspacher@meyerlex.com

**CERTIFICATE OF SERVICE**

I, Edward C. Eberspacher, certify that on March 14, 2018, I caused a true and accurate copy of the foregoing documents to be filed with the Court's CM/ECF system, and to be served via email and U.S. Mail on the following:

/s/ Edward C. Eberspacher
Edward C. Eberspacher


Daniel Edelman
Heather Kolbus
Cathleen M. Combs
James O. Latturner
Edelman, Combs, Latturner & Goodwin, LLC
20 South Clark, Suite 1500
Chicago, Illinois 60603
E: dedelman@edcombs.com
E: hkolbus@edcombs.com
E: ccombs@edcombs.com
E: jlatturner@edcombs.com

Curtis C. Warner
Warner Law Firm, LLC
350 S. Northwest Highway, Suite 300
Park Ridge, Illinois 60068
E: cwarner@warner.legal