## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FLORENCE MUSSAT, M.D., S.C., | |
| Plaintiff, | |
| v. | Case No. 17 C 8841 |
| IQVIA INC., and JOHN DOES 1-10, | Judge Martha M. Pacold |
| Defendants. | |

## ORDER

Plaintiff Florence Mussat, M.D., S.C., filed a motion for leave to file a second amended complaint. [97].[1] The proposed second amended complaint would add Dr. Charles Shulruff, DDS as an additional plaintiff and class representative and modify the putative class definitions. IQVIA opposes amendment on both fronts. IQVIA also filed a motion to strike a portion of Mussat's reply brief. [119]. For the following reasons, the motion to amend is granted in part and denied in part, and the motion to strike is granted.

## STATEMENT

### I.   Joinder of Shulruff as Named Plaintiff and Class Representative

The court first addresses the addition of Shulruff to the proposed amended complaint. Mussat's motion is styled simply as a motion to amend the complaint pursuant to Rule 15(a)(2). But since the amended complaint seeks to add Shulruff as a new party plaintiff, IQVIA argues that Mussat must also satisfy the joinder requirements of Rule 20(a). In the reply brief, Mussat does not argue that the joinder requirements of Rule 20(a) are satisfied. Instead, Mussat argues that the correct framework is intervention under Rules 23 and 24(b).

There is no proper motion to intervene before the court. Mussat's motion seeks only amendment under Rule 15(a)(2). Mussat raises the possibility of intervention for the first time on reply, and IQVIA moves to strike that argument. *See* [119] at 3–5. The motion to strike the intervention argument is granted, as the

---

[1] As filed, the motion also sought to lift the discovery stay, but Mussat withdrew that portion of the motion. [100].

argument was raised for the first time on reply.  *See Horvath v. Apria Healthcare, LLC*, No. 19-cv-04894, 2019 WL 5725378, at *2 (N.D. Ill. Nov. 5, 2019).

Mussat's reply brief does not contest that additional standards beyond Rule 15(a)(2) apply to a party plaintiff addition but does not argue that the requirements of Rule 20(a) joinder are satisfied.  Accordingly, any argument based on Rule 15(a)(2) alone or on Rule 20(a) is waived.  *See Candell v. Shiftgig Bullpen Temp. Emp. Agency*, No. 17-cv-03620, 2019 WL 2173797, at *3 (N.D. Ill. May 20, 2019) (citing *Betco Corp., Ltd. v. Peacock*, 876 F.3d 306, 309 (7th Cir. 2017)).  The motion for leave to file an amended complaint is therefore denied without prejudice to the extent it seeks to add Shulruff as an additional party plaintiff.[2]

## II.   Amendment of Class Definitions

IQVIA also opposes the class definitions set forth in the proposed amended complaint.  The parties agree that Rule 15(a)(2) governs whether this amendment should be allowed.  Leave to amend "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a); *see also Runnion ex rel Runnion v. Girl Scouts of Greater Chicago and Northwest Indiana*, 786 F.3d 510, 519 (7th Cir. 2015).  However, "district courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile."  *Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008).

IQVIA argues the proposed amendment would be futile.  Ordinarily, opposing a proposed amended complaint on futility grounds is equivalent to moving to dismiss the proposed amendment under Rule 12(b)(6).  *See Cohen v. American Security Insurance Co.*, 735 F.3d 601, 607 (7th Cir. 2013) ("There is no practical difference, in terms of review, between a denial of a motion to amend based on futility and the grant of a motion to dismiss for failure to state a claim.").  Here, however, IQVIA argues that amendment is futile since the proposed amended complaint could not withstand a motion to strike the class definition.  The Seventh Circuit described the district court's grant of an earlier motion to strike in this case as "the functional equivalent of an order denying certification of the class Mussat proposed."  *Mussat v. IQVIA, Inc.*, 953 F.3d 441, 445 (7th Cir. 2020); *see also Microsoft v. Baker*, —— U.S. ——, 137 S. Ct. 1702, 1711 n.7 (2017) ("An order striking class allegations is 'functional[ly] equivalent' to an order denying class

---

[2] A Rule 20(a) joinder motion "is filed by a person or entity who is already a party to the proceeding and wishes to add a non-party as a party to the case," whereas a "Rule 24(b) motion to intervene is used by non-parties to add themselves as parties in the litigation." *Platinum Cmty. Bank v. Marshall Investments Corp.*, No. 06-cv-03544, 2008 WL 4866143, at *1 (N.D. Ill. July 29, 2008).  Here, the motion to amend was filed by Mussat, an existing party to the case.  If Shulruff wishes to intervene, he must file that motion himself; Mussat cannot do so for him.

certification.") (citation omitted, alteration in original). Thus, IQVIA's futility argument amounts to an argument that the class (and subclass) proposed in the amended complaint should not be certified.

Mussat's proposed amended complaint includes a single "Facsimile Equipment" class, and a single "Standalone Facsimile Equipment" subclass, defined as follows:

> A. ***Facsimile Equipment Class:*** Plaintiff Florence Mussat, M.D., S.C., brings this claim on behalf of a class, consisting of: (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendant IQVIA, promoting its goods or services for sale (d) who were sent faxes on facsimile equipment of any type, (e) and which did not contain an opt out notice as described in 47 U.S.C. §227.
>
> B. ***Standalone Facsimile Equipment SubClass***: Plaintiff Dr. Charles Shulruff, D.D.S. brings this claim on behalf of a class, consisting of: (a) all persons with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendant IQVIA, promoting its goods or services for sale (d) who were sent faxes on a standalone fax machine, (e) and which did not contain an opt out notice as described in 47 U.S.C. §227.

[97-3] at 10–11 ¶ 60.

IQVIA advances two arguments in opposition to Mussat's proposed amendment, the first based on a lack of geographic restriction in the proposed class definition and the second based on a recent FCC ruling.

The first argument has been foreclosed by the Court of Appeals. After IQVIA filed its response to Mussat's current motion, the Court of Appeals reversed the order granting IQVIA's prior motion to strike. *See* [111-1]; *Mussat*, 953 F.3d 441. So while IQVIA argues that the amended complaint suffers from the "same jurisdictional defect" identified before—a lack of geographic restriction—the Court of Appeals has now ruled that this aspect of the class definition does not present a jurisdictional problem. 953 F.3d at 448. The lack of geographic restriction does not render the proposed amendment futile.

IQVIA's other futility argument centers on a recent FCC declaratory ruling, *In the Matter of Amerifactors Fin. Grp., LLC Petition for Expedited Declaratory Ruling Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991 Junk Fax Prot. Act of 2005*, CG Docket Nos. 02-278, 05-338, 2019 WL 6712128 (Dec. 9, 2019). The TCPA provides: "It shall be unlawful for any person within the United

States . . . to use any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement," with certain exceptions. 47 U.S.C. § 227(b)(1)(C). The TCPA defines "telephone facsimile machine" as "equipment which has the capacity (A) to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line, or (B) to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper." § 227(a)(3). In 2003, the FCC clarified that "the TCPA's prohibition on unsolicited faxes . . . does not extend to facsimile messages sent as email over the Internet." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14133 ¶ 200 (2003). The December 9, 2019 *Amerifactors* ruling stated: "By this declaratory ruling, we make clear that an online fax service that effectively receives faxes 'sent as email over the Internet' and is not itself 'equipment which has the capacity . . . to transcribe text or images (or both) from an electronic signal received over a regular telephone line onto paper' is not a 'telephone facsimile machine' and thus falls outside the scope of the statutory prohibition." 2019 WL 6712128, at *1 ¶ 3 (quoting the 2003 FCC Order and § 227(a)(3)).

Plaintiff's proposed "Fascimile Equipment Class" includes individuals "who were sent faxes on facsimile equipment of any type." [97-3] ¶ 60(A). IQVIA contends that under the *Amerifactors* ruling, the failure to exclude individuals who received faxes via an online fax service from the proposed class is a fatal flaw.[3]

IQVIA contends that the *Amerifactors* ruling is binding here. IQVIA correctly notes that this court has no jurisdiction to entertain a challenge to the validity of a final FCC ruling on the meaning of a TCPA term. *CE Design, Ltd. v. Prism Bus. Media, Inc.*, 606 F.3d 443, 449 (7th Cir. 2010). That is the exclusive province of the Courts of Appeals. *Id.* at 446 ("[T]he Administrative Orders Review Act, better known as the Hobbs Act, reserves to the courts of appeals the power 'to enjoin, set aside, suspend (in whole or in part), or to determine the validity of' all final FCC orders.") (citing 28 U.S.C. § 2342(1); 47 U.S.C. § 402(a)). Nor may the court "ignore" or fail to enforce a final FCC ruling. *Id.* at 448; *see also Klueh v. Paul Vallas for All Chicago*, No. 19-cv-00249, 2020 WL 4934975, at *4 (N.D. Ill. Aug. 24, 2020) ("If the ruling is a final order of the FCC, the Hobbs Act requires the court to follow the order absent a direct appeal.").

However, Mussat argues that the court is only "bound to follow the FCC's interpretation of a term" where "there is no appeal of the FCC's interpretation." *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, 950 F.3d 959, 965 (7th Cir. 2020); *see also Blow v. Bijora, Inc.*, 855 F.3d 793, 802 (7th Cir. 2017) ("[A]bsent a direct appeal to review the 2015 FCC Order's interpretation . . . we are bound to

---

[3] IQVIA does not argue that the "Standalone Facsimile Equipment" subclass, which limits the subclass to individuals who received faxes on a "standalone fax machine," [97-3] ¶ 60(B), has the same issue.

follow it."). IQVIA disagrees, arguing that until and unless the order is reversed, it has the force of law. It cites *Scoma Chiropractic, P.A. v. Dental Equities, LLC*, No. 2:16-cv-00041, 2018 WL 2455301 (M.D. Fla. June 1, 2018), another case Mussat is involved in. There, the court stayed the action pending a ruling from the FCC on the *Amerifactors* petition (the petition that resulted in the Dec. 9, 2019 declaratory ruling). *Id.* at *4. The court rejected an argument that the stay would have to extend through subsequent judicial review, and stated that until the D.C. Circuit ruled, "the FCC's Final Order" would have "the force of law" and the "case could proceed." *Id.* at *4 (quoting *Mais v. Gulf Coast Collection Bureau, Inc.*, 768 F.3d 1110, 1121 (11th Cir. 2014)).

But the court does not need to decide whether a final FCC order would have the force of law pending judicial review. The declaratory ruling was issued by the Consumer and Governmental Affairs Bureau, not the full Commission, and an application for review by the full FCC was filed.[4] 47 U.S.C. § 155(c)(3) provides that a ruling by a subordinate unit of the FCC "shall have the same force and effect . . . as orders, decisions, reports, or other actions of the Commission," unless "reviewed as provided in paragraph (4) of this subsection." Section 155(c)(4) governs applications "for review by the Commission." Accordingly, "[a]n order from a subordinate unit of the FCC . . . becomes final if no application for review before the full Commission is filed." *Georgia Power Co. v. Teleport Commc'ns Atlanta, Inc.*, 346 F.3d 1047, 1050 (11th Cir. 2003). But once an application for review is filed, "the subordinate unit's order is non-final." *Id.* It is unclear whether the application for review remains pending. Without that information there is at least a question whether the Bureau's ruling is a final order of the FCC.

Thus, on the current record, the *Amerifactors* ruling does not render the proposed amendment futile. The court declines to address the parties' arguments about whether, were the order final, it could have retroactive effect, or whether it would apply to the facts of this case. The court expresses no view on any potential argument related to these issues that the parties might raise in the future.

Nor does the court address Mussat's argument that under Seventh Circuit precedent and the FCC's previous decisions an online fax service may constitute a "telephone facsimile machine" within the meaning of the TPCA. The court need not address this issue now to conclude that IQVIA has not carried its burden of showing that the proposed amendment is futile. The parties are free to raise this issue again later as well.

---

[4] *See* Career Counseling Services, Inc., Application for Review, CG Docket Nos. 02-278, 05-338 (filed Jan. 8, 2020), https://ecfsapi.fcc.gov/file/1010809915952/Application%20for%20Review%20of%20Amerifactors%20Order--file%20copy.pdf.

The motion to strike [119] is granted.   The motion for leave to amend [97] is granted in part and denied in part.   The motion is granted to the extent it seeks to amend the putative class definitions and denied to the extent it seeks to add Shulruff as a party plaintiff.

Date: October 9, 2020                              /s/ Martha M. Pacold