IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| FLORENCE MUSSAT, M.D., S.C., on behalf of plaintiff and the class members defined herein, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 1:17-CV-08841 |
| v. | ) ) | Honorable Martha M. Pacold |
| IQVIA INC. and JOHN DOES 1-10, | ) ) | |
| Defendants. | ) | |

**IQVIA INC.'S MOTION TO MAINTAIN STAY OF DISCOVERY AND EXTEND
DEADLINE TO RESPOND TO SECOND AMENDED COMPLAINT**

The Defendant, IQVIA Inc. ("IQVIA"), through counsel, Meyer Law Group LLC, moves this Court for an order maintaining the existing stay of discovery pursuant to Fed. R. Civ. P. 26(c)(1) and extending IQVIA's deadline to respond to Plaintiff's Second Amended Complaint pursuant to Fed. R. Civ. P. 6(b)(1)(A). In support of its Motion, IQVIA states:

**I.      SUMMARY**

This is a purported class action under the Telephone Consumer Protection Act ("TCPA"). Recently, Plaintiff amended its putative class definitions through the filing of a Second Amended Complaint. The amended class definitions raise significant legal issues related to personal jurisdiction, standing and subject matter jurisdiction. In particular, both amended class definitions are geographically unrestricted and include nonresidents of Illinois. Moreover, the putative class representative used an online fax service to receive the faxes that are the subject of this litigation.

The discovery stay that has been in place since May 25, 2018 should be maintained, because these same issues are presently the subjects of IQVIA's pending Petition for a Writ of Certiorari in the United States Supreme Court, and Career Counseling Services, Inc.'s ("Career")

Application for Review to the Federal Communications Commission ("FCC"). First, since the Court's order on October 9, 2020 granting Plaintiff leave to amend, IQVIA has filed a Petition for Writ of Certiorari asking the Supreme Court to consider whether this Court may exercise personal jurisdiction over IQVIA with respect to the claims of out-of-state unnamed class members.[1] That petition is pending. Second, Career's Application for Review to the FCC asks the FCC to consider whether the TCPA applies to faxes sent to an online fax service, which gives rise to the questions of whether a putative class representative who uses an online fax service to receive faxes has standing to maintain TCPA claims and whether this Court has subject matter jurisdiction over such claims.

Thus, two questions that are central to the progress and ultimate disposition of this case are presently under review by the Supreme Court and the FCC. Whatever the outcome on review, the Supreme Court's and FCC's decisions will have significant effects on this case. The legal issues that are currently under review could be case-dispositive, but even if Plaintiff's claims survive, the Supreme Court's and FCC's adjudications will shape the putative classes, control the scope of class discovery and directly impact further anticipated motion practice before this Court. Thus, good cause exists for this Court to exercise its considerable discretion and maintain the stay of discovery and extend IQVIA's deadline to respond to the Second Amended Complaint pending the Supreme Court's and FCC's adjudication of the pending legal issues.

## II. RELEVANT PROCEDURAL HISTORY

### A. The Existing Stay of Discovery.

On May 24, 2018, IQVIA filed a Motion to Stay Discovery pending the resolution of two

---

[1] IQVIA uses "out-of-state unnamed class members" and similar formulations as shorthand for putative class members who did not receive IQVIA's allegedly unsolicited faxes in Illinois, and whose claims therefore do not arise out of or relate to IQVIA's Illinois contacts.

significant legal issues: (1) whether the faxes allegedly received by Plaintiff constitute "unsolicited facsimile advertisements" subject to the TCPA; and (2) whether this Court may exercise personal jurisdiction over IQVIA relative to the claims of out-of-state unnamed class members. (Dkt. 39). On May 25, 2018, Judge Kendall granted IQVIA's motion and stayed discovery. (Dkt. 42).

Following Judge Kendall's entry of the stay order, Plaintiff repeatedly requested (both orally in open court and by formal written motion) that the court lift the stay in whole or in part. Judge Kendall rejected each and every such request. *See*, *e.g.*, Dkt. 84 ("Plaintiff's oral request to issue third party subpoenas or third party document preservation is denied after oral argument heard in open Court. Discovery shall remain stayed pending appeal"); Dkt. 89 (Plaintiff's "motion for Discovery [86] is denied for the reasons stated in open Court"). Following the reassignment of this action to Judge Pacold, Plaintiff renewed – but ultimately withdrew – similar requests to lift the stay of discovery. *See, e.g.*, Dkt. 100, Plaintiff's Notice of Withdrawal of Motion [97] to Lift Stay on Discovery.

**B.      This Court's Order Granting In Part and Denying In Part Plaintiff's Motion for Leave to File a Second Amended Complaint.**

On October 9, 2020, this Court entered an order granting in part and denying in part Plaintiff's Motion for Leave to File a Second Amended Complaint ("Motion to Amend"). (Dkt. 126). More specifically, after striking Plaintiff's intervention argument, this Court denied Plaintiff's request to join Dr. Charles Shulruff, DDS, as an additional plaintiff and class representative. *Id*. at pp. 1-2 ("[A]ny argument based on Rule 15(a)(2) alone or on Rule 20(a) is waived"). Nevertheless, this Court granted Plaintiff's Motion "to the extent it seeks to amend the putative class definitions." *Id*. at p. 6. In reaching its decision to allow amendments to the putative class definitions, this Court considered two primary arguments advanced by IQVIA in opposition to the Motion to Amend.

IQVIA first argued that the proposed amended putative class definitions lacked any geographic restriction and thus ran afoul of Judge Kendall's personal jurisdiction ruling relative to the claims of "nonresidents that did not allegedly receive faxes in Illinois." (Dkt. 58 at p. 15). As this Court pointed out, after IQVIA filed its response to Plaintiff's Motion to Amend on February 28, 2020, the Seventh Circuit Court of Appeals reversed Judge Kendall's personal jurisdiction ruling on March 11, 2020. (Dkt. 126 at p. 3). Although IQVIA's timely petition for rehearing and rehearing *en banc* was denied on May 14, 2020, IQVIA is seeking review of the personal jurisdiction issue and the associated geographic defects that permeate Plaintiff's amended class definitions. On March 19, 2020, the United States Supreme Court extended the time within which to file a petition for a writ of certiorari to 150 days from the date of an order denying a timely petition for rehearing. IQVIA timely filed its Petition for a Writ of Certiorari in the United States Supreme Court on October 13, 2020, which was docketed on October 16, 2020 as Case No. 20-510. (Judicial Notice). Plaintiff's opposition to the Petition is currently due on November 16, 2020, and IQVIA's Reply in support is currently due on December 1, 2020.

IQVIA's second argument centered on a recent Declaratory Ruling issued by the FCC's Consumer and Governmental Affairs Bureau (the "Bureau"). *See In the Matter of Amerifactors Financial Group, LLC*, GC Docket Nos. 02-278 and 05-338 ("Amerifactors Ruling"). More specifically, the Bureau held that an online fax service is "plainly" not a telephone facsimile machine and a fax sent to an online fax service is thus not "an unsolicited facsimile advertisement" prohibited by the TCPA. *Id*. at ¶ 11. It is undisputed that Plaintiff used an online fax service to receive the faxes that are the subject of this litigation. *See*, Dkt. 104-3 at ¶¶ 71-72 (Plaintiff admits the subject fax invitations were sent to and received by the Vonage fax portal – an online cloud-based fax service that allowed Plaintiff to access the subject faxes as email attachments).

4

As this Court pointed out, Career filed an application for review of the Amerifactors Ruling by the full FCC. (Dkt. 126 at p. 5). At this time, the Court "decline[d] to address the parties' arguments about whether, were the order final, it could have retroactive effect, or whether it would apply to the facts of this case." *Id*. The Court nevertheless invited the parties to re-raise the issue later in these proceedings. *Id*. ("The court expresses no view on any potential argument related to these issues that the parties might raise in the future," and similarly noted that "[t]he parties are free to raise this issue again later as well"). AmeriFactors Financial Group LLC filed its opposition brief on January 23, 2020.[2] Career filed its Reply in support of its application for review on February 3, 2020.[3] Career's application for review is fully-briefed and, as of the time of filing the instant Motion, awaits ruling from the full FCC.

**C.     Plaintiff's Second Amended Complaint and Amended Putative Class Definitions.**

On October 15, 2020, Plaintiff filed the now-operative Second Amended Complaint against IQVIA. (Dkt. 128). In it, Plaintiff seeks to represent the following two putative classes:

> A.     ***Facsimile Equipment Class:*** (a) *all persons* with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendant IQVIA, promoting its goods or services for sale (d) who were sent faxes on *facsimile equipment of any type*, (e) and which did not contain an opt out notice as described in 47 U.S.C. §227.

(Dkt. 128 at ¶ 45(A)) (*emphasis supplied*).

> B.     ***Standalone Facsimile Equipment SubClass:*** (a) *all persons* with fax numbers (b) who, on or after a date four years prior to the filing of this action (28 U.S.C. §1658), (c) were sent faxes by or on behalf of defendant IQVIA, promoting its goods or services for sale (d) who were sent faxes on *a standalone fax machine*,

---

[2] *See,* AmeriFactors Financial Group LLC, Opposition to Application for Review, CG Docket Nos. 02-278, 05-338 (filed Jan. 23, 2020), https://ecfsapi.fcc.gov/file/1012304105191/AmeriFactors%20Opposition%20to%20Application%20for%20Review.pdf

[3] *See*, Career Counseling Services, Inc., Reply in Support of Application for Review, CG Docket Nos. 02-278, 05-338 (filed Feb. 3, 2020), https://ecfsapi.fcc.gov/file/10203268226782/Reply%20Supp.%20Application%20for%20Review%20of%20Amerifactors%20Order.pdf

(e) and which did not contain an opt out notice as described in 47 U.S.C. §227.

(Dkt. 128 at ¶ 45(B)) (*emphasis supplied*).

As the emphasized language suggests, both amended putative class definitions are geographically-unrestricted and include claims of nonresidents. This Court's assertion of personal jurisdiction over IQVIA relative to the claims of nonresidents (and by extension the viability of Plaintiff's geographically-unrestricted putative class definitions) is the subject of IQVIA's pending Petition for a Writ of Certiorari. Further, the Facsimile Equipment Class includes recipients of faxes sent to online fax services as email attachments, which runs afoul of the Bureau's Amerifactors Ruling that is the subject of Career's pending Application for Review to the full FCC. Further still, Plaintiff by its own admission falls outside the scope of the "Standalone Facsimile Equipment SubClass" because it is undisputed that Plaintiff did not receive any of the subject faxes on a "standalone fax machine."[4]

### III.   ARGUMENT

#### A.   Legal Standard

District courts enjoy extremely broad discretion in controlling discovery. *Crawford-El v. Britton*, 523 U.S. 574, 598 (1998); *Patterson v. Avery Dennison Corp.*, 281 F.3d 676, 681 (7th Cir. 2002). In accordance with Rules 26(c) and (d), a court may limit the scope of discovery or control its sequence in order to "protect a party or person from annoyance, embarrassment, oppression, or

---

[4] IQVIA expressly reserves its right to challenge Plaintiff's standing to represent the "Standalone Facsimile Equipment SubClass" and this Court's subject-matter jurisdiction based on the absence of any "Case" or "Controversy." *See*, U.S. Const. art. III, § 2 and *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 ("The [standing] doctrine limits the category of litigants empowered to maintain a lawsuit in federal court"). Notably, in the *proposed* Second Amended Complaint attached to Plaintiff's Motion to Amend, *Shulruff* sought to represent the Standalone Facsimile Equipment SubClass. (Dkt. 97-3 at ¶ 60(B)). It was only after this Court denied Plaintiff's request to join Shulruff that Mussat substituted itself as the purported representative of the Standalone Facsimile Equipment SubClass. Plaintiff's substitution of itself for Shulruff is at odds with Plaintiff's admission that it did not receive any of the subject faxes on a standalone fax machine. *See*, Dkt. 104-3 at ¶¶ 71-72.

undue burden or expense." Fed. R. Civ. P. 26(c)(1) and (d); *Britton*, 523 U.S. at 598. Such a motion will be granted "for good cause" and after the moving party has certified to the court that it "has in good faith conferred or attempted to confer with the other affected parties in an effort to resolve the dispute." Fed. R. Civ. P. 26(c)(1); N.D. Ill. L.R. 37.2.[5]

In this district, "such stays are granted with substantial frequency." *In re Sulfuric Acid Antitrust Litigation*, 231 F.R.D. 331, 336 (N.D. Ill. 2005) (string citations omitted). Moreover, stays are often deemed appropriate pending the resolution of "a threshold issue such as jurisdiction, standing, or qualified immunity or where, in cases such as this one, discovery may be especially burdensome and costly to the parties." *Dsm Desotech Inc. v. 3D Sys. Corp.*, Case No. 08-cv-1531, 2008 U.S. Dist. LEXIS 87473, at *5 (N.D. Ill. Oct. 28, 2008) (granting stay request pending outcome of motion to dismiss based on "enormously expensive and burdensome" discovery to defendants). However, "to determine whether a stay of discovery is warranted, the court must look at the individual case." *Duneland Dialysis LLC v. Anthem Ins. Cos., Inc.*, Case No. 4:09-cv-36, 2010 U.S. Dist. LEXIS 33599, at *4 (N.D. Ind. Apr. 6, 2010) (but noting that a stay is particularly appropriate when a potentially dispositive threshold issue is raised).

**B.     This Court Should Maintain the Existing Stay of Discovery Pending the United States Supreme Court's Adjudication of IQVIA's Petition for a Writ of Certiorari.**

The same rationale that has justified a stay on discovery since May 25, 2018 continues to apply, because the same question concerning this Court's personal jurisdiction over IQVIA relative to the claims of out-of-state unnamed class members is not yet settled, and is the subject of further appellate review. The Supreme Court's reversal of the Seventh Circuit's order and reinstatement of Judge Kendall's original ruling will have a direct and significant impact on the viability of Plaintiff's class claims as presently defined in the Second Amended Complaint. Given the

---

[5] IQVIA's "Good Faith Certification" is set forth at the close of this Motion, *infra*.

7

jurisdictional nature of the issue and the substantial impact it will have on the scope of class discovery, this Court should maintain the existing stay pending the Supreme Court's adjudication of IQVIA's Petition.

Good cause exists to maintain the discovery stay pending further review of the personal jurisdiction issue that is the subject of IQVIA's Petition. It is the most settled of law that a court must have personal jurisdiction over a defendant as to each claim it decides. And in *Bristol-Myers Squibb Co.* v. *Superior Court of California*, 137 S. Ct. 1773 (2017), the United States Supreme Court made clear that the fact that one would-be plaintiff's claims are similar to another's claims cannot create personal jurisdiction where there otherwise would be none. There is, in other words, no aggregate-litigation exception to personal jurisdiction requirements. IQVIA's Petition squarely presents the important question that the Supreme Court explicitly reserved in *Bristol-Myers*: whether a federal court can exercise personal jurisdiction over the federal-law claims of putative class members that the court would not have personal jurisdiction to hear if the claims were brought separately. *See Bristol-Myers*, 137 S. Ct. at 1784; *see also id.* at 1789 n.4 (Sotomayor, J. dissenting). If the Seventh Circuit's rule is allowed to stand, plaintiffs will be able to manufacture jurisdiction in a favorable forum by tacking on otherwise improper claims to a single properly brought one. That, in turn, will prompt forum shopping and erase the distinction between general and specific jurisdiction. It will also enhance the power of certain States to regulate conduct outside of their borders, while diminishing the power of other States to regulate conduct within their own.

Further review of this fundamental jurisdictional question may result in the Supreme Court's reinstatement of Judge Kendall's original ruling. In that case: (a) neither of Plaintiff's amended class definitions could stand; (b) this Court would again strike the claims of all non-

residents; and (c) the geographic scope of class discovery would be limited to Illinois. Any class discovery conducted before the Supreme Court's consideration of IQVIA's Petition concerning faxes allegedly sent to recipients in the other forty-nine states may ultimately constitute needless expense and a waste of attorney time and energy.[6] Accordingly, this Court should grant IQVIA's request to maintain the existing stay of discovery pending the adjudication of IQVIA's Petition for a Writ of Certiorari.

C. **This Court Should Maintain the Existing Stay of Discovery Pending the Full FCC's Adjudication of Career's Application for Review of the Amerifactors Ruling.**

This Court declined to address application of the Amerifactors Ruling to this case in its earlier order based on Career's filing of an application for review to the full FCC (raising the issue of whether the Amerifactors Ruling is "final"). (Dkt. 126 at p. 5). IQVIA maintains that the Amerifactors Ruling is now "final" for purposes of this proceeding, notwithstanding Career's application for review. Nevertheless, IQVIA understands and appreciates that further guidance from the full FCC may benefit the Court's ultimate decision-making. Accordingly, while this Court did not regard the Amerifactors Ruling as grounds for finding Plaintiff's proposed amendments futile at this time, this Court should maintain the discovery stay pending the FCC's adjudication of Career's application for review.

1. **This Court May Decide the Standing and Subject Matter Jurisdiction Issues In the Absence of the Full FCC's Regulatory Interpretation.**

As a threshold jurisdictional issue, this Court is empowered to consider Plaintiff's standing based on its admitted receipt of IQVIA's faxes on the Vonage fax portal notwithstanding Career's

---

[6] Nationwide class actions of this scale that lack a connection to the forum are particularly burdensome on defendants, who face enormous pressure to give in to so called blackmail settlements, where trebled or per-violation damages can mean that a defendant is exposed to potentially significant liability to plaintiffs whose damages are next to nothing. *See* Sheila B. Scheuerman, *Due Process Forgotten: The Problem of Statutory Damages and Class Actions*, 74 Mo. L. Rev. 103, 104 (2009).

application for review. At a minimum, *Chevron* deference applies to the Bureau's Amerifactors Ruling, which unquestionably reinforces the conclusion that Plaintiff suffered no concrete harm as a result of the faxes. Accordingly, confirmation by the full FCC is not necessary to resolve the issue as a matter of law.

Recently, another district court analyzed the standing and subject matter jurisdiction issues in an identical factual context. *See*, *Daisy, Inc. v. Mobile Mimi, Inc.*, Case No. 2:20-cv-17, 2020 U.S. Dist. LEXIS 175536 (M.D. Fla. Sept. 24, 2020). The representative class plaintiff in *Daisy* received faxes through the very same Vonage online service utilized by Plaintiff here. *Id*. at *1 ("Vonage acts as a sort of middleman, collecting then sending Daisy its faxes attached to e-mails"). The court expressly noted that "[t]he 'bare procedural violation' of a statute, however, is not enough, even if Congress prescribed a cause of action." *Id*. at *4, *citing*, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1549 (2016). The court continued that "regardless of any TCPA violation, Daisy must show Mini Mobile's fax caused concrete harm." *Id*. This Daisy could not do because, like Plaintiff here, "it is undisputed Daisy received the fax by e-mail, not a fax machine." *Id*.

In reaching its decision that Daisy failed to satisfy Article III's injury-in-fact requirement, the court considered "both history and the judgment of Congress." *Id*. at *8. The court first determined that the alleged intangible harm claimed by Daisy did not have "a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.*, *citing, Spokeo,* 136 S. Ct. at 1549. Rather, "this is 'the kind of fleeting infraction upon personal property that tort law has resisted addressing.'" *Id*. at *11, *citing*, *Salcedo v. Hanna*, 936 F.3d 1162, 1172 (11th Cir. 2019). Stated differently, "it is 'more akin to walking down a busy sidewalk and having a flyer briefly waive in one's face'than a harm conferring Article III standing." *Id*.

Turning to congressional judgment, the *Daisy* court noted that "Congressional silence may also be instructive" and relative to faxes received by e-mail, "Washington's silence is deafening." *Id*. at *15 ("With the Junk Fax Prevention Act of 2005, Congress amended the TCPA but neither included faxes received by e-mail nor made findings identifying the type of harm Daisy alleges"). The *Daisy* court continued: "tellingly, Congress never amended the TCPA to account for those intangible harms suffered from faxes received over e-mail." *Id*. at 16.

Finally, the *Daisy* court acknowledged that "regulatory interpretation of the TCPA buttresses a conclusion the harm alleged here is not concrete." *Id*. After all, "[i]t is congressional – not FCC – judgment the Court relies on most." *Id*., *citing*, *Salcedo*, 936 F.3d at 1169. Nevertheless, as the agency tasked with promulgating TCPA regulations, the *Daisy* court favorably cited the Bureau's Amerifactors Ruling. *Id*. at *17, *citing*, *Amerifactors* at *3-4 ("faxes sent to online fax services do not cause the specific harms to consumers Congress sought to address in the TCPA..."). *See also, Advanced Rehab & Med., P.C. v. Amedisys Holding, LLC*, Case No. 1:17-cv-01149, 2020 U.S. Dist. LEXIS 153181, at *19 (W.D. Tenn. Aug. 24, 2020) (holding that *Chevron* deference applies to the Bureau's Amerifactors Ruling).

The *Daisy* court also cited with approval another Bureau decision decided less than two months ago on the heels of the Amerifactors Ruling. *Daisy*, 2020 U.S. Dist. LEXIS 175536 at *17, *citing*, *In re Joseph T. Ryerson & Son, Inc. Pet. for Expedited Declaratory Ruling*, No. 02-278, 05-338, 2020 FCC LEXIS 3385, at *13 (2020) ("we reiterate that transmissions that are effectively email do not implicate the consumer harms Congress sought to address in the TCPA, such as tying up phone/fax lines and the unnecessary use of paper and toner/ink from automatic printing").[7] Ultimately, the *Daisy* court decided the standing issue and dismissed Daisy's

---

[7] *See,* https://ecfsapi.fcc.gov/file/090487418733/DA-20-1038A1.pdf

11

complaint notwithstanding Career's pending application for review to the full FCC.

### 2. A Stay is Warranted Under the Primary Jurisdiction Doctrine.

Even though this Court is not *required* to await the full FCC's adjudication of Career's application for review before deciding whether the faxes allegedly received by Plaintiff constitute "unsolicited advertisements" subject to the TCPA, further guidance from the full FCC may benefit the Court's ultimate decision-making and constitutes "good cause" to maintain the existing stay.

The doctrine of primary jurisdiction "is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties." *U.S. v. Western Pac. R.R. Co.*, 352 U.S. 59, 63 (1956). The doctrine "applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body." *Id*. at 64. In such a case "the judicial process is suspended" pending resolution of such issues by the administrative body for its views. *Id.*

There is no fixed standard or formula for the doctrine's application. *Id*. Instead, the district court should consider whether application of the doctrine would promote uniformity in statutory or regulatory construction and involve the use of the agency's special expertise and procedural flexibility and whether complex policy determinations are at issue. *Id*. at 64-67. As the Supreme Court explained, "in cases raising issues of fact not within the conventional experience of judges or cases requiring the exercise of administrative discretion, agencies created by Congress for regulating the subject matter should not be passed over." *Id.* at 64.

Courts in this Circuit have identified several potentially-relevant factors to consider when assessing whether to invoke the primary jurisdiction doctrine: (a) whether the question is within the conventional experience of judges; (b) whether the question involves technical or policy issues

within the agency's particular field of expertise; (c) whether a determination would involve the exercise of agency discretion; (d) the need for a consistent and uniform rule; (e) the likelihood of inconsistent rulings if not referred to the agency; (f) whether the issue has already been before the agency; (g) whether judicial economy is served by having the agency resolve the issue; and (h) whether the referral will result in substantial delay and added expense. *Gensel v. Performant Techs., Inc.*, Case No. 13-C-1196, 2015 U.S. Dist. LEXIS 9736, at *4 (E.D. Wis. Jan. 28, 2015) (primary jurisdiction doctrine invoked and stay of proceedings granted pending the FCC's adjudication of two petitions asking, *inter alia*: (a) whether the TCPA applies to non-telemarketing calling activities; and (b) whether all predictive dialers are categorically "automatic telephone dialing systems" under the TCPA). Application of these factors demonstrates that a stay is appropriate here.

> **i. The Determination Whether Online Fax Services Fall within the TCPA's Definition of "Telephone Facsimile Machine" is Not within the Conventional Experience of Judges, Involves Technical and Policy Issues within the FCC's Field of Expertise and Involves the Exercise of Agency Discretion.**

Congress delegated authority to the FCC to promulgate binding legal rules and to interpret the provisions of the TCPA. The FCC's authority to determine the applicability of the TCPA to faxes received by users of online fax services falls squarely within its delegated authority. Congress explicitly tasked the FCC with "prescribe[ing] regulations to implement the requirements" of the TCPA, specifically including the subsection prohibiting unsolicited facsimile advertisements. *See*, 47 U.S.C. § 227(b)(2); *accord Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953 (9th Cir. 2009) ("Congress has delegated the FCC with the authority to make rules and regulations to implement the TCPA"). The FCC's authority also "includes issuing rules clarifying and interpreting the TCPA, as well as addressing petitions" like the ones that resulted in the

13

Amerifactors and Ryerson Rulings. *Comprehensive Health Care Sys. of the Palm Beaches, Inc. v. M3 United States Corp. ("CHCS")*, 2017 U.S. Dist. LEXIS 166033, at *6 (S.D. Fla. Oct. 6, 2017).

"The FCC is charged with expertise in telecommunications regulation" (*CHCS*, 2017 U.S. Dist. LEXIS 166033, at *7) and Congress recognized that many of the technical considerations within the FCC's expertise were not within the conventional experience of judges. *See*, *Stewart v. T-Mobile USA, Inc.*, Case No. 4:14-cv-02086, 2014 U.S. Dist. LEXIS 198466, at *4 (D.S.C. Oct. 8, 2014) ("It is virtually without dispute that the FCC has comparative expertise with regard to the TCPA").

Invoking the FCC's expertise is appropriate here.[8] The issue – whether an online fax service is "equipment" that has the necessary "capacity" to be considered a "telephone facsimile machine" – is "precisely the sort of interstitial question that favors deference to the agency's interpretation." *Advanced Rehab,* 2020 U.S. Dist. LEXIS 153181, at *18. Further, "the rapid advancements in, and complexity of, modern technology, particularly with respect to new means of communication, speaks directly to the [Bureau's] expertise in the area of telecommunications." *Id*. Deferring to the full FCC will advance the basic purpose of the primary jurisdiction doctrine because the specialized knowledge of the FCC is needed.

> ii. **The Determination Whether Online Fax Services Fall within the TCPA's Definition of "Telephone Facsimile Machine" Also Requires Uniformity in Administration to Avoid Possible Inconsistent Rulings.**

Again, the Bureau's ruling is entitled to this Court's deference even if it is not – as Plaintiff argues – "final" in view of the pending application for review. But to the extent this Court is not

---

[8] Although there have been prior occasions when the FCC has addressed whether certain computerized faxing technology falls within the TCPA's prohibitions, none (other than the Amerifactors and Ryerson Rulings) are directly applicable to receiving faxes using cloud-based online fax services at issue here. The first-impression nature of the question presented also weighs in favor of a stay.

inclined to decide the standing and subject matter jurisdiction issues on the existing record, it makes good practical sense to maintain the stay until after the FCC's adjudication to avoid a determination in this Court that is inconsistent with the full FCC's review. This Court should give the full FCC an opportunity to review the Bureau's ruling that online fax services do not fall within the TCPA. If the FCC declines Career's application for review, the Court will benefit from the finality of the Bureau's Amerifactors Ruling insofar as a ruling by a subordinate unit of the FCC "shall have the same force and effect… as orders, decisions, reports, or other actions of the Commission." 47 U.S.C. § 155(c)(3). If the FCC accepts Career's application for review, the Court will benefit from whatever additional guidance the full FCC provides. Under both scenarios, this Court preserves administrative uniformity and avoids the possibility of inconsistent rulings.

There is considerable upside – and little to no downside – awaiting the full FCC's adjudication of the application for review before proceeding further here. Deferral is appropriate for a uniform interpretation of the statutory question at issue.

### iii. The Interests of Judicial Economy and Preservation of Party Resources and Time Counsel in Favor of a Stay.

A stay will simplify and streamline the issues in this case, including the potentially case-dispositive questions: (a) whether the faxes are "unsolicited advertisements" subject to the TCPA; (b) Plaintiff's standing; and (c) this Court's subject matter jurisdiction. A stay will also have the added benefit of reducing the burden of litigation on the parties and on this Court. As another court noted in support of its decision to stay the proceeding pending the FCC's adjudication of Amerifactors' original petition: "[a]ny delay plaintiffs will experience in this case is outweighed by the potential prejudice that could inure to [the defendant] and its liability to class members that might very well not fit within the proposed class following the FCC's decision." *Scoma Chiro., P.A. v. Dental Equities, LLC*, Case No. 2:16-cv-41, 2018 U.S. Dist. LEXIS 92736, at *12 (M.D.

Fla. June 1, 2018). This Court's consideration of judicial economy, likely prejudice to IQVIA and the preservation of party resources and time similarly counsel in favor of a stay here.

### D. This Court Should Also Extend IQVIA's Deadline to Respond to the Second Amended Complaint.

Pursuant to Fed. R. Civ. P. 6, this Court may, for good cause, extend IQVIA's responsive pleading deadline "if a request is made before the original time or its extension expires." Fed. R. Civ. P. 6(b)(1)(A). Good cause exists here.

The rationale for maintaining the stay of discovery applies equally to further pleading pending the Supreme Court's adjudication of IQVIA's Petition for a Writ of Certiorari and the full FCC's adjudication of Career's Application for Review. IQVIA contends Plaintiff lacks standing to prosecute its individual claim(s) and/or represent either of the two amended putative classes. Similarly, IQVIA maintains that there is no "case" or "controversy" such that this Court lacks subject matter jurisdiction. But rather than engage in protracted and expensive motion practice while IQVIA's Petition and Career's Application remain pending, the more economical and efficient approach is to extend IQVIA's responsive pleading deadline until the review process has been exhausted.

Wherefore, the Defendant IQVIA Inc. respectfully prays for the entry of an order maintaining the existing stay of discovery and extending IQVIA's deadline to respond to Plaintiff's Second Amended Complaint pending the Supreme Court's and FCC's adjudication of the pending legal issues and such further relief as this Court deems just and equitable.

### GOOD FAITH CERTIFICATION

On October 27, 2020, counsel for IQVIA conferred with counsel for Plaintiff in a good faith effort to resolve the issues presented in this Motion without court action pursuant to Fed. R. Civ. P. 26(c)(1) and N.D. Ill. L.R. 37.2, but Plaintiff would not agree to maintain the stay or extend

the deadline to respond to the Second Amended Complaint pending the Supreme Court's and FCC's adjudication of the pending legal issues.

Dated: October 29, 2020. Respectfully Submitted:

By: /s/ Edward C. Eberspacher
Edward C. Eberspacher
Counsel to IQVIA Inc.

**CERTIFICATE OF SERVICE**

    I, Edward C. Eberspacher, certify that on October 29, 2020, I caused a true and accurate copy of the foregoing document to be filed with the Court's CM/ECF system, and to be served via email on the following:

Daniel Edelman
Heather Kolbus
Edelman, Combs, Latturner & Goodwin, LLC
20 South Clark, Suite 1500
Chicago, Illinois 60603
E: dedelman@edcombs.com
E: hkolbus@edcombs.com

Curtis C. Warner
5 E. Market St., Suite 250
Corning, NY 14830
E: cwarner@warner.legal

                                                /s/ Edward C. Eberspacher
                                                Edward C. Eberspacher

Edward C. Eberspacher
Meyer Law Group LLC
30 North LaSalle Street
Suite 1410
Chicago, Illinois 60602
T – 312.265.0565
F – 312.888.3930
E – teberspacher@meyerlex.com